UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL STEVEN SOKOLOWSKI,

                   Plaintiff,

v.                                                Case No. 21-cv-1245-pp

DR. KUBER, DR. RIBAULT,
and NURSE STEPHEN MCCULLEN,

                   Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO AMEND (DKT. NO. 10) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Michael Steven Sokolowski, a person incarcerated at Racine Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided him inadequate medical treatment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, the plaintiff's motion to amend his request for relief, dkt. no. 10, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 27, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $48.99. Dkt. No. 5. The court received that fee on November 30, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff has sued Doctors Kuber and Ribault and Nurse Stephen McCullen, who he says provided inadequate treatment at Racine. Dkt. No. 1 at 1–2. The plaintiff alleges that on March 19, 2021, he was transferred to Racine from Dodge Correctional Institution, where he had been diagnosed with acute prostatitis and given a referral for a consultation with a urologist or specialist. Id. at 2–3. A doctor at Dodge (who is not a defendant) previously had conducted a prostate exam on the plaintiff and prescribed him finasteride for his prostatitis. Id. at 3. On March 30, 2021, the plaintiff requested an appointment

with the Health Services Unit ("HSU") at Racine to address recurring pain in his penis that he believed was associated with his prostatitis. Id. at 2. The next day, Nurse Travis Brady (who is not a defendant) saw the plaintiff and scheduled him for an appointment with a doctor. Id. at 2–3.

On April 20, 2021, the plaintiff saw Dr. Kuber about his pain. Id. at 3. Dr. Kuber told the plaintiff "he did not have prostatitis because he was to[o] young." Id. The plaintiff reported that his symptoms had subsided and asked whether he should continue taking the finasteride for prostatitis. Id. Dr. Kuber allegedly "shook her head no." Id. Dr. Kuber told the plaintiff to write to the HSU if his symptoms reappeared, and she would put him back on finasteride. Id. The plaintiff alleges that Dr. Kuber did not conduct an examination, run any tests or consider his previous diagnosis in rendering her decision. Id.

The plaintiff's pain returned about two weeks later, so he filed an appointment request with the HSU. Id. at 4. He alleges he received only "pointless visits with the nurse," who did not take his condition seriously and provided "no real medical attention for his condition." Id. The plaintiff says Nurse McCullen was "[e]specially" unhelpful and "minimized the plaintiff[']s condition on several occasions, refused to see the plaintiff on 7-14-21, and made untrue statements in the nursing narrative note on 7-14-21 without even seeing the plaintiff." Id.

On June 14, 2021, the plaintiff again saw Dr. Kuber supposedly to address his ongoing pain. Id. But he alleges Dr. Kuber "had no idea that's what she was seeing the plaintiff for" and stated, "I thought that [pain] was gone." Id.

4
Case 2:21-cv-01245-PP   Filed 09/23/22   Page 4 of 12   Document 13

Dr. Kuber conducted "only a routine physical" and did not address the plaintiff's pain. Id. at 4–5. The plaintiff attempted to report his symptoms, but Dr. Kuber allegedly cut him off in mid-sentence and told him, "Stop, your [*sic*] perfectly healthy, there's nothing wrong with you your [*sic*] imagining the pain." Id. at 5. Dr. Kuber suggested the plaintiff seek anxiety medication and request an appointment with the psychiatric services unit. Id.

On July 19, 2021, the plaintiff saw Dr. Ribault, who prescribed new medication. Id. (The plaintiff does not say what this medication was.) The plaintiff alleges the medication "seemed to work at first" but stopped working after a few weeks. Id. The plaintiff saw Dr. Ribault and Nurse Brady again on August 12, 2021, but he says that doctor and nurse minimized his condition and did not properly address it. Id. at 5–6. The plaintiff alleges that by then, he "could barely walk without experiencing extreme pain." Id. at 6. The plaintiff returned to the HSU twice more that day "pleading for help because his pain was worsening." Id. Nurse Moore (who is not a defendant) told the plaintiff she would "send an email for [him] to be seen by Dr. Ribault in the morning." Id. However, the plaintiff did not see Dr. Ribault the next day. Id. At 11:00 p.m., Nurse Moore had the plaintiff sent to All Saints Hospital. Id. Staff there diagnosed the plaintiff with epididymitis, which he says "can be caused by complications of prostatitis." Id. He alleges Dr. Ribault then cancelled his referral with a urologist from March 2021, which he never received. Id.

The plaintiff seeks an injunction to prevent the defendants "from using Deliberate Indifference when treating [his] medical condition." Id. at 7. He also

seeks $675,000 in damages "for the permanent damage they have caused [his] body, which leaves [him] in great pain to this day." Id. The plaintiff also asks to amend his request for relief to add that he also seeks "medical treatment from an outside vendor." Dkt. No. 10. The court will grant the plaintiff's request and consider this additional requested relief.

  C. Analysis

As the plaintiff anticipated, his allegations of inadequate medical treatment amount to a claim of deliberate indifference, which the court reviews under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S.

at 837). Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that he suffered from prostatitis, which caused recurring and extreme pain in his penis. He says the pain became so intense that he could barely walk. The plaintiff eventually developed epididymitis, for which he was hospitalized. A lay person would have recognized the plaintiff's symptoms as requiring medical treatment. The court concludes that, for the purposes of screening, the plaintiff's allegations satisfy the objective component of an Eighth Amendment claim. See Lor v. Kelley, No. 09-C-0666, 2011 WL 924347, at *5 (E.D. Wis. Mar. 14, 2011), aff'd, 436 F. App'x 634 (7th Cir. 2011) (recognizing that prisoner's prostate condition, including prostatitis, constituted an objectively serious medical need).

The plaintiff's allegations also satisfy the subjective component. The plaintiff alleges that a doctor at Dodge performed a prostate examination and diagnosed him with prostatitis. He says Dr. Kuber rejected that diagnosis and insisted he was "to[o] young" to have prostatitis, despite not conducting an examination or performing any tests to confirm that conclusion. Dkt. No. 1 at 3. When the plaintiff returned complaining of painful symptoms, Dr. Kuber performed only a routine physical, again insisted the plaintiff was "perfectly healthy" and suggested he seek psychiatric treatment. Id. at 5. The plaintiff alleges Nurse McCullen refused to see him and lied about the plaintiff's condition in nursing notes. He says Dr. Ribault prescribed him medication that

stopped working after a short time, refused to see him for a follow-up and canceled his referral to a urologist despite his ongoing symptoms. The plaintiff says he now has "permanent damage" to his body because of his treatment. Dkt. No. 1 at 7. The plaintiff's allegation that the defendants "minimized his condition" is vague. That allegation could suggest the plaintiff received undesirable but not constitutionally inadequate treatment. Only unreasonable care that fails to meet a substantial risk of serious harm violates the Eighth Amendment. See Christopher v. Liu, 861 F. App'x 675, 679–80 (7th Cir. 2021); Forbes v Edgar, 112 F.3d 262, 267 (7th Cir. 1997). But for the purposes of screening, the plaintiff has alleged sufficient facts to allow him to proceed on a claim that the defendants were aware of his condition but refused or failed to treat it properly. The plaintiff may proceed on his Eighth Amendment claim against Doctors Kuber and Ribault and Nurse McCullen. The court advises the plaintiff that, to succeed on his claim, he will need to present evidence showing that his treatment was constitutionally inadequate and not merely negligent or different from what he would have preferred.

### III. Letters

The court also has received two letters from the plaintiff. In the first one, received December 23, 2021, the plaintiff describes his health issues and advises the court that the prison staff are not prioritizing his health. Dkt. No. 11. He concludes the letter this way: "I don't know if they're retaliating against me for filing a suit against them or if it's just their usual negligence. What do I do?" Id. at 2.

The second letter, received March 25, 2022, says that the plaintiff has learned about some thing called PACER, and says that if such a thing exists, "I am requesting it." Dkt. No. 12. PACER does exist, but this court does not run it or provide access to it. A person who wishes to have access to PACER must register for an account by going to https://pacer.uscourts.gov and clicking on the "Register for an Account" link at the top of the page. A person can register to simply see the docket for a fee of $0.10 per page. If a person accrues less than $0 in charges in a quarter, fees are waived for that period. The plaintiff also says that some of his mail has been returned to him with a sticker that says that his mail must have a return address of PO Box 189, Phoenix, Maryland on it. Dkt. No. 12. The court suspects this is because of the new mail policy put into effect by the Wisconsin Department of Corrections in December 2021, through which DOC contracts with a mail management service called TextBehind to open mail, copy it and send the copies to DOC institutions. For more information, see https://www.weau.com/2021/11/04/wisconsin-doc-changes-how-inmates-receive-mail-following-drug-incidents/.

The court regrets how long it has taken to address the plaintiff's claims; the case should progress now that the court has screened the plaintiff's complaint. If the plaintiff wants the court to take a legal action, he should file a motion, not write letters. But the court cannot give the plaintiff legal advice or tell him what to do (just like it cannot give the defendants legal advice or tell them what to do).

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's request to amend his request for relief. Dkt. No. 10.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Doctors Kuber and Ribault and Nurse Stephen McCullen at Racine Correctional Institution. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$301.01** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 23rd day of September, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**